## WEAVER v. PALMER BROTHERS COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 510. Argued December 11, 1925.—Decided March 8, 1926.

1. Legislative determinations are entitled to great weight; but it is always open to interested parties to show that the legislature has transgressed the limits of its power. P. 410.
2. Invalidity of a legislative act may be shown by things that may be judicially noticed, or by facts established by evidence, the burden being on the attacking party to establish the invalidating facts. P. 410.

3. A state law (Pa. Ls. 1923, c. 802,) forbidding the use, in comfortables, of shoddy, even when sterilized, is so far arbitrary and unreasonable that it violates the due process clause of the Fourteenth Amendment. Pp. 410, 415.

4. Without considering whether the mere failure of the Act to prohibit the use of other filling materials is sufficient to invalidate the prohibition of the use of shoddy as a violation of the equal protection clause, the number and character of the things permitted to be used in such manufacture properly may be taken into account in deciding whether the prohibition of shoddy is a reasonable and valid regulation or is arbitrary and violative of the due process clause. P. 412.

5. Such a prohibition can not be sustained, as a health measure, in face of evidence showing that shoddy, even when composed of secondhand materials, is rendered harmless by sterilization, and in face of permission, in the same Act, to use numerous other kinds of materials, if sterilized when secondhand. P. 411.

6. Nor can such prohibition be sustained as a measure to prevent deception, since deception may be avoided by adequate regulations. P. 414.

7. Constitutional guaranties can not be made to yield to mere convenience. P. 415.

8. Every opinion of the Court is to be read with regard to the facts of the case and the question actually decided. *Powell* v. *Pennsylvania,* 127 U. S. 678, distinguished. P. 414.

3 Fed. (2d) 333, affirmed.

APPEAL from a decree of the District Court enjoining the defendant (appellant), an official of Pennsylvania, from enforcing against the plaintiff (appellee) a law of that State regulating the manufacture and sale of bedding, in so far as it forbade the use of shoddy. Plaintiff manufactured comfortables in Connecticut, using shoddy made of new and secondhand materials, and sold its product in Pennsylvania. See also 266 U. S. 588.

*Mr. E. Lowry Humes,* with whom *Messrs. George W. Woodruff,* Attorney General of Pennsylvania, and *James O. Campbell,* Deputy Attorney General, were on the brief, for appellant.

The legislature enacted the statute for the purpose of protecting the public health, and securing the public against fraud and deception. That these are proper purposes for the exercise of the police power is admitted. The evil was the insanitary condition that existed in the bedding industry, and the insanitary product which was coming into the hands of the consuming public, as well as the fraud and deception which was being practiced in the make-up of the articles sold. Much knowledge of this evil was and is a part of the common knowledge of mankind. The Pennsylvania statute of 1913 and its amendments related only to mattresses, and absolutely prohibited the use of shoddy in their manufacture. With the advantage of ten years' experience in the enforcement of that Act, as well as a knowledge of the activities in twenty-five other States where the police power had already been invoked for the same purpose, the legislature, estimating the extent and character of the evil, enacted the Act of 1923; and in this Act, extended the regulations to all articles of stuffed and filled bedding, including comfortables; and, to make effective enforcement possible, prescribed a new method of tagging and labeling. Since this enactment, Maryland has adopted a similar law, and the city of Spokane, Washington, has passed an ordinance on the same subject.

The growth of the bedding industry and the development of the practices which led to such a general recognition of the existence of evil as to require the exercise of the police power by the legislatures of twenty-seven States and two large cities within a period of fourteen years, demonstrates the wisdom of the words of this Court in *Holden* v. *Hardy*, 169 U. S. 366, that the law is, to a certain extent, a progressive science. The questions raised in this case are more far reaching in their effect than is evident on the face of the record; and the affirmation of the judgment of the court below would have the

effect of striking down the legislative enactments of a large number of States.

The state legislatures have a wide discretion in classifying subjects for police regulation. *Heath & Milligan Mfg. Co.* v. *North Dakota,* 207 U. S. 338; *Ward and Gow* v. *Krinsky,* 259 U. S. 503; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540. Inasmuch as the Pennsylvania legislation made a classification "which bears a reasonable and just relation to the act." in question, it cannot be seriously contended that the appellee· or any other person has been denied the equal protection of the law. The prohibitions, restrictions, regulations, penalties, and burdens fall equally on all persons similarly situated. *Magoun* v. *Illinois Trust & Sav. Bk.,* 170 U. S. 283; *Powell* v. *Commonwealth,* 127 U. S. 678. The conclusion of the court below is that the only provision of the Act which violates the 14th Amendment is the provision which absolutely prohibits the use of shoddy in the articles covered by the Act. Every provision of the Act is based upon the same classification and therefore if the classification is arbitrary the equal protection of the laws clause of the 14th Amendment is violated by the entire Act, and the entire Act must fall. Under the definitions in the Act, secondhand materials are materials whose identity and prior use can be readily determined, and are confined almost entirely to materials formerly used as bedding and re-used only in remaking and renovating. Except when remade and renovated for the owner, the use of these materials is limited. Shoddy, however, in the process of manufacture, loses its identity. Its nature facilitates the practice of fraud and deceit.

The question as to whether or not the legislature exercised good judgment in enacting the measure is immaterial for the purposes of this case. *Heath & Milligan Mfg. Co.* v. *North Dakota,* 207 U. S. 338; *State* v. *Emery,* 178 Wis. 147; *Price* v. *Illinois,* 238 U. S. 446. This case

is clearly ruled by *Powell* v. *Commonwealth,* 127 U. S. 678. · Cf. *People* v. *Weiner,* 271 Ill. 74; *Hannibal & St. Joseph R. R.* v. *Husen,* 95 U. S. 465.

The question for determination is the limited one whether the challenged provisions had a reasonable relation to the purposes of the Act. That the cases cited by the court below deny rather than establish the large discretionary judicial power which the court below assumed to exercise, is shown by analysis of the cases themselves. *Meyer* v. *Nebraska,* 262 U. S. 390; *Welch* v. *Swasey,* 214 U. S. 91; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Lawton* v. *Steele,* 152 U. S. 133; *Burns Baking Co.* v. *Bryan,* 264 U. S. 504.

To argue the merit of this legislation, or the efficacy of the remedies it invokes, would be to adopt the error into which that court has already fallen.

*Mr. Edwin W. Smith,* with whom *Messrs. Carl E. Glock* and *Frank L. McGuire* were on the brief, for appellee.

There is nothing in the Act nor in the testimony that would indicate that the legislature, in the prohibition of shoddy, was attempting to prevent fraud and deception. It would seem that if anything could be seen it would be that a certain material was shoddy, as against any other kind of filling that might be used. But the provisions of the statute as to labels seem to be effective as preventing any fraud and deception, and these provisions the court below has permitted to stand.

The history of the legislation is of little value in determining the case. It is well known that if a movement of some sort is started, resulting in the passage of a statute by one of the state legislatures, in a short time it is followed by other States, apparently without very much consideration. Thus it is that, starting in 1909, this bedding legislation has spread in sixteen years to twenty-eight

States. The futility of all this legislation is shown by testimony in the record. It is only in Pennsylvania and Maryland that the law is so broad as to cover filling made by grinding up perfectly new and unused fabric. The Maryland statute was passed in 1924, modelled after the Pennsylvania statute. None of this legislation in Pennsylvania related to comfortables until the Act of 1923. There has been no judicial interpretation of any of these statutes except in the case of *People* v. *Weiner,* 271 Ill. 74.

The world's supply of new wool is insufficient to clothe the people of the temperate zones and to meet other demands. This scarcity and the public demand for cheaper substitutes require the commercial use of reclaimed wool and cotton fiber. It is undenied and is a well recognized fact that any fabric from which shoddy may be made, may be sterilized by processes which are comparatively cheap to operate.

The statute works a deprivation of liberty and property. If the interference is an unreasonable and arbitrary exercise of the police power, or if it has no substantial relation to the public health, the Act violates the 14th Amendment and is unconstitutional. *Mugler* v. *Kansas,* 123 U. S. 523; *Jay Burns Baking Co. et al.* v. *Charles W. Bryan et al.,* 264 U. S. 504; *Allgeyer* v. *Louisiana,* 165 U. S. 578. Where there is any doubt as to whether or not a thing prohibited is obnoxious, poisonous or harmful, the determination by the legislature is conclusive; but if there is no doubt; that is, if the testimony in the case shows that the thing prohibited is not harmful, or that it may be rendered harmless by proper regulation, then the court may say that its prohibition is unreasonable and arbitrary. *Price* v. *Illinois,* 238 U. S. 466; *Meyer* v. *Nebraska,* 262 U. S. 390. The equal protection clause protects from discriminatory or class legislation. *Missouri* v. *Lewis,* 101 U. S. 22; *Terrace* v. *Thompson,* 263 U. S. 197. Similar legislation was held

unconstitutional in *People* v. *Weiner*, 271 Ill. 74; *Greensboro* v. *Ehrenreich*, 80 Ala. 579; *State* v. *Taft*, 118 N. C. 1190; *Koscinsko* v. *Slomberg*, 68 Miss. 469. The prohibition of an article is unconstitutional if regulation will accomplish the intended purpose. *People* v. *Weiner, supra;* *Hannibal & St. Joseph R. R.* v. *Husen*, 95 U. S. 465; *Greensboro* v. *Ehrenreich, supra; State* v. *Taft, supra; Valley Rys.* v. *Harrisburg*, 280 Pa. 385; *St. Louis* v. *Evraiff*, 256 S. W. 489; *Booth* v. *Illinois*, 184 U. S. 424; *Marymont* v. *Nevada State Banking Board*, 33 Nev. 333; Tiedeman on Police Power, p. 301. Distinguishing *Powell* v. *Pennsylvania*, 127 U. S. 678; *Crane* v. *Campbell*, 245 U. S. 304; and *Price* v. *Illinois*, 238 U. S. 446.

The Act permits the use of the same mattresses and blankets by different persons night after night in hotels and Pullman cars. It permits hospitals to use the same bedding over and over again for one diseased patient after another. The mattresses from the pesthouse are remade and renovated legally under the Act with sterilization. Shoddy, however, is prohibited. The Act permits shoddy in blankets, which come into immediate contact with the body. It prohibits shoddy in comfortables, which encase the shoddy in a cover of new fabric.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

Appellee is a Connecticut corporation, and for more than fifty years it and its founders have manufactured comfortables in that State, and have sold them there and in other States. An Act of the legislature of Pennsylvania, approved June 14, 1923, regulates the manufacture, sterilization and sale of bedding. Section 1 of the Act prescribes the following definitions: " Mattress " means any quilted pad, mattress, mattress pad, mattress protector, bunk quilt or box spring, stuffed or filled with excelsior, straw, hay, grass, corn husks, moss, fibre, cotton, wool,

hair, jute, kapok, or other soft material. "Pillow,"
"bolster," or "feather bed" means any bag, case, or
covering made of cotton or other textile material, and
stuffed or filled with any filler mentioned in the definition
of mattress, or with feathers or feather down. The word
"comfortable" means any cover, quilt, or quilted article
made of cotton or other textile material, and stuffed or
filled with fibre, cotton, wool, hair, jute, feathers, feather
down, kapok, or other soft material. "Cushion" means
any bag or case made of leather, cotton, or other textile
material, and stuffed or filled with any filler, except jute
and straw, mentioned in the definition of "pillow," or
with tow. The word "new" as used in the Act means any
material or article which has not been previously manu-
factured or used for any purpose. "Secondhand" means
any material or article of which prior use has been made.
"Shoddy" means any material which has been spun into
yarn, knit or woven into fabric, and subsequently cut
up, torn up, broken up, or ground up.

Section 2 provides: "No person shall employ or use in
the making, remaking, or renovating of any mattress,
pillow, bolster, feather bed, comfortable, cushion, or ar-
ticle of upholstered furniture: (a) Any material known
as 'shoddy,' or any fabric or material from which 'shoddy'
is constructed; (b) any secondhand material, unless, since
last used, such secondhand material has been thoroughly
sterilized and disinfected by a reasonable process approved
by the Commissioner of Labor and Industry; (c) any new
or secondhand feathers, unless such new or secondhand
feathers have been sterilized and disinfected by a reason-
able process approved by the Commissioner of Labor and
Industry." Punishment by fine or imprisonment is pre-
scribed for every violation of the Act, and each sale is
declared to be a separate offense.

The Act took effect January 1, 1924. Appellant is
charged with its enforcement, and threatened to proceed

against the appellee and its customers. January 29, 1924, appellee brought this suit to enjoin the enforcement of the Act on the grounds, among others, that, as applied to the business of appellee, it is repugnant to the due process and equal protection clauses of the Fourteenth Amendment. An application under § 266 of the Judicial Code for a temporary injunction was denied. The decree was affirmed by this court. 266 U. S. 588. Later, defendant answered, and there was a trial at which much evidence was introduced. The District Court found that the statute infringes appellee's constitutional rights insofar as it absolutely prohibits the use of shoddy in the manufacture of comfortables; and to that extent the decree restrains its enforcement. This appeal is under § 238 of the Judicial Code.

The question for decision is whether the provision purporting absolutely to forbid the use of shoddy in comfortables violates the due process clause of the equal protection clause. The answer depends on the facts of the case. Legislative determinations express or implied are entitled to great weight; but it is always open to interested parties to show that the legislature has transgressed the limits of its power. *Penna. Coal Co.* v. *Mahon,* 260 U. S. 393, 413. Invalidity may be shown by things which will be judicially noticed (*Quong Wing* v. *Kirkendall,* 223 U. S. 59, 64), or by facts established by evidence. The burden is on the attacking party to establish the invalidating facts. See *Minnesota Rate Cases,* 230 U. S. 352, 452.

For many years prior to the passage of the Act comfortables made in appellee's factories had been sold in Pennsylvania. In 1923, its business in that State exceeded $558,000 of which more than $188,000 was for comfortables filled with shoddy. About 5000 dozens of these were filled with shoddy made of new materials, and about 3000 dozens with secondhand shoddy. Appellee

makes approximately 3,000,000 comfortables annually, and about 750,000 of these are filled with materials defined by the Act as shoddy. New material from which appellee makes shoddy consists of clippings and pieces of new cloth obtained from cutting tables in garment factories; secondhand shoddy is made of secondhand garments, rags, and the like. The record shows that annually many million pounds of fabric, new and secondhand, are made into shoddy. It is used for many purposes. It is rewoven into fabric; made into pads to be used as filling material for bedding; and is used in the manufacture of blankets, clothing, underwear, hosiery, gloves, sweaters and other garments. The evidence is to the effect that practically all the woolen cloth woven in this country contains some shoddy. That used to make comfortables is a different grade from that used in the textile industry. Some used by appellee for that purpose is made of clippings from new woolen underwear and other high grade and expensive materials. Comfortables made of secondhand shoddy sell at lower prices than those filled with other materials.

Appellant claims that, in order properly to protect health, bedding material should be sterilized. The record shows that, for the sterilization of secondhand materials from which it makes shoddy, appellee uses effective steam sterilizers. There is no controversy between the parties as to whether shoddy may be rendered harmless by disinfection or sterilization. While it is sometimes made from filthy rags, and from other materials that have been exposed to infection, it stands undisputed that all dangers to health may be eliminated by appropriate treatment at low cost. In the course of its decision the District Court said, " It is conceded by all parties that shoddy may be rendered perfectly harmless by sterilization." The Act itself impliedly determines that proper sterilization is practicable and effective. It permits the use of second-

hand materials and new and secondhand feathers when sterilized, and it regulates processes for such sterilization.

There was no evidence that any sickness or disease was ever caused by the use of shoddy. And the record contains persuasive evidence, and by citation discloses the opinions of scientists eminent in fields related to public health, that the transmission of disease-producing bacteria is almost entirely by immediate contact with, or close proximity to, infected persons; that such bacteria perish rapidly when separated from human or animal organisms; and that there is no probability that such bacteria, or vermin likely to carry them, survive after the period usually required for the gathering of the materials, the production of shoddy, and the manufacture and the shipping of comfortables. This evidence tends strongly to show that, in the absence of sterilization or disinfection, there would be little, if any, danger to the health of the users of comfortables filled with shoddy, new or secondhand; and confirms the conclusion that all danger from the use of shoddy may be eliminated by sterilization.

The State has wide discretion in selecting things for regulation. We need not consider whether the mere failure to forbid the use of other filling materials that are mentioned in the Act is sufficient in itself to invalidate the provision prohibiting the use of shoddy, as a violation of the equal protection clause. But the number and character of the things permitted to be used in such manufacture properly may be taken into account in deciding whether the prohibition of shoddy is a reasonable and valid regulation, or is arbitrary and violative of the due process clause. Shoddy-filled comfortables made by appellee are useful articles for which there is much demand. And it is a matter of public concern that the production and sale of things necessary or convenient for use should not be forbidden. They are to be distinguished

from things that the State is deemed to have power to suppress as inherently dangerous.

Many States have enacted laws to regulate bedding for the protection of health. Legislation in Illinois (Laws of 1915, p. 375,) went beyond mere regulation and prohibited the sale of secondhand quilts or comfortables even when sterilized or when remade from sterilized secondhand materials. In *People* v. *Weiner*, 271 Ill. 74, the state Supreme Court held that to prohibit the use of material not inherently dangerous and that might be rendered safe by reasonable regulation transgresses the constitutional protection of personal and property rights.

The appellant insists that this case is ruled by *Powell* v. *Pennsylvania*, 127 U. S. 678. But the cases are essentially different. A law of Pennsylvania prohibited the manufacture, sale, or possession for sale, of oleomargarine. An indictment against Powell charged a sale and possession with intent to sell. At the trial he admitted the allegations and, for his defense, offered to prove certain facts which were excluded as immaterial. The question for decision was whether these facts were sufficient to show that, as applied, the law was invalid. Mr. Justice Harlan, speaking for the Court, said (p. 682) that the purpose of these offers of proof was to " show that the article sold was a new invention, not an adulteration of dairy products, nor injurious to the public health, but wholesome and nutritious as an article of food . . . [p. 684.] It will be observed that the offer in the court below was to show by proof that the particular articles the defendant sold, and those in his possession for sale, in violation of the statute, were, in fact, wholesome or nutritious articles of food. It is entirely consistent with that offer that many, indeed, that most kinds of oleomargarine butter in the market contain ingredients that are or may become injurious to health. The court cannot say, from anything of which it may take judicial cognizance, that

such is not the fact. Under the circumstances disclosed
in the record, and in obedience to settled rules of constitu-
tional construction, it must be assumed that such is the
fact." And see *Powell* v. *Commonwealth,* 114 Pa. St.
265, 279, 295.

" Laws frequently are enforced which the court recog-
nizes as possibly or probably invalid if attacked by a dif-
ferent interest or in a different way." *Quong Wing* v.
*Kirkendall, supra,* 64. This is well illustrated by the
*Powell Case* compared with *Schollenberger* v. *Pennsyl-
vania,* 171 U. S. 1. Every opinion is to be read having
regard to the facts of the case and the question actually
decided. *Cohens* v. *Virginia,* 6 Wheat, 264, 399. The
facts clearly distinguish this case from the *Powell Case.*
There, it was assumed that most kinds of oleomargarine
in the market were or might become injurious to health.
Here, it is established that sterilization eliminates the
dangers, if any, from the use of shoddy. As against that
fact, the provision in question cannot be sustained as a
measure to protect health. And the fact that the Act per-
mits the use of numerous materials, prescribing steriliza-
tion if they are secondhand, also serves to show that the
prohibition of the use of shoddy, new or old, even when
sterilized, is unreasonable and arbitrary.

Nor can such prohibition be sustained as a measure to
prevent deception. In order to ascertain whether the
materials used and the finished articles conform to its re-
quirements, the Act expressly provides for inspection of
the places where such articles are made, sold or kept for
sale. Every article of bedding is required to bear a tag
showing the materials used for filling and giving the
names and addresses of makers and vendors, and bearing
the word " secondhand " where there has been prior use,
and giving the number of the permit for sterilizing and
disinfecting where secondhand materials or feathers are
used for filling. Obviously, these regulations or others

that are adequate may be effectively applied to shoddy-filled articles.

·· The constitutional guaranties may not be made to yield to mere convenience. *Schlesinger* v. *Wisconsin, ante,* p. 230. The business here involved is legitimate and useful; and, while it is subject to all reasonable regulation,. the absolute prohibition of the use of shoddy in the manufacture of comfortables is purely arbitrary and violates the due process clause of the Fourteenth Amendment. *Adams* v. *Tanner,* 244 U. S. 590, 596; *Meyer* v. *Nebraska,* 262 U. S. 390; *Burns Baking Co.* v. *Bryan,* 264 U. S. 504.

*Decree affirmed.*

. MR. JUSTICE HOLMES, dissenting.

If the Legislature of Pennsylvania was of opinion that disease is likely to be spread by the use of unsterilized shoddy in comfortables I do not suppose that this Court would pronounce the opinion so manifestly absurd that it could not be acted upon. If we should not, then I think that we ought to assume the opinion to be right for the purpose of testing the law. The Legislature may have been of opinion further that the actual practice of filling comfortables with unsterilized shoddy gathered from filthy floors was wide spread; and this again we must assume to be true. It is admitted to be impossible to distinguish the innocent from the infected product in any practicable way, when it is made up into the comfortables. On these premises, if the Legislature regarded the danger as very great and inspection and tagging as inadequate remedies, it seems to me that in order to prevent the spread of disease it constitutionally could forbid any use of shoddy for bedding and upholstery. Notwithstanding the broad statement in *Schlesinger* v. *Wisconsin* the other day, I do not suppose that it was intended to overrule *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192, and the other cases to which I referred there.

It is said that there was unjustifiable discrimination. A classification is not to be pronounced arbitrary because it goes on practical grounds and attacks only those objects that exhibit or foster an evil on a large scale. It is not required to be mathematically precise and to embrace every case that theoretically is capable of doing the same harm. " If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." *Miller* v. *Wilson*, 236 U. S. 373, 384. In this case, as in *Schlesinger* v. *Wisconsin*, I think that we are pressing the Fourteenth Amendment too far.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE concur in this opinion.