**SOUTHERN MOTORWAYS, Inc., v. PERRY et al.**

No. 569.

District Court, N. D. Georgia.

March 24, 1930.

Murrell & Murrell, of Atlanta, Ga., for complainants.

S. J. Smith, Jr., of Commerce, Ga., Troutman & Troutman, of Atlanta, Ga., and George M. Napier, Atty. Gen., for defendants.

Before BRYAN, Circuit Judge, and BORAH and SIBLEY, District Judges.

SIBLEY, District Judge.

This bill challenges the constitutional validity of an Act of the Georgia Legislature approved August 29th, 1929 (Laws 1929, p. 293), which defines and regulates "Motor Carriers" upon the public highways, and subjects them to the jurisdiction and further regulation of the Georgia Public Service Commission. The complainant is a Georgia corporation, whose charter was granted September 12, 1929, wherein the business authorized to be conducted is "operating automobiles, motorbusses and coaches for hire for the transportation of passengers and freight, and in connection therewith to have passenger and freight depots, warehouses, etc." On September 30, 1929, complainant applied to the Georgia Public Service Commission for the issuance of a "Certificate of Public Convenience and Necessity" required by the act, and asked to be allowed to establish rates and schedules between Atlanta and Macon, Macon and Savannah, Macon and Waycross, all in Georgia, and from Atlanta to Chattanooga, in Tennessee. The application concludes with the statement that applicant is familiar with the above-mentioned act and the rules and regulations made in pursuance of it by the commission, and a promise to comply with them. The commission granted a certificate, but refused permission to operate schedules between Atlanta and Chattanooga. On November 26, 1929, schedules between Macon and Atlanta were fixed for complainant and for two competing companies, to wit: Greyhound Lines, Inc., and Colonial Stages, Inc. About December 9, 1929, complainant applied to the commission to establish additional schedules between Macon and Atlanta, which was denied. On March 3, 1930, the commission cited complainant to show cause on March 12, 1930, why its certificate should not be revoked for failure to observe schedules, for failure to run regularly, and for its failure to give the service which complainant had proposed. The complainant then filed this bill asking an injunction against the revocation of its certificate and against the enforcement of the commission's order restricting its schedules, on the ground that the Act of August 29, 1929, is in conflict with provisions of the Constitution of the United States.

This act has not yet been construed by the Supreme Court of Georgia. Section 22 provides that each section and part of it is independent, and that the invalidity of any part is not to affect the remainder. The Legislature, therefore, intended to go as far as possible in the regulations proposed, but to abandon none because some might prove invalid. We accordingly will attempt no general construction of the act, and will confine this opinion to objections which this complainant is entitled to raise, and has raised by the facts of this case. These we conceive to be: (1) Can the state of Georgia demand of complainant a certificate of public convenience and necessity as a condition of its carrying on its business? (2) Can it demand a fee therefor, and require annual license fees on each vehicle? (3) Can it fix and limit complainant's schedules? (4) Can it revoke the certificate for noncompliance, thereby forfeiting complainant's business good will?

The right of the state to regulate is drawn from two distinct sources, to wit: the nature of the business done, and the use of the public highways. Certain businesses, because of their public interest, are subject to regulation, although their owners exercise no special franchises, and use in them only their own property. Wolff v. Industrial Court, 262 U. S. 523, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280. Such a business is the common carriage of passengers or freight. Again, when the public highways are made the place of business, a right to regulate, in the interest of the safety and convenience of the other users of the highways, and of the preservation of the highways themselves, arises independently of the nature of the business done. Of the regulations proposed in the Georgia statute, some seem referable to the one source of power, and some to the other, and some to both. The obstacles likely to be encountered in the Federal Constitution are conflict with the interstate commerce and post roads clauses; arbitrary classification, contrary to the equal protection clause of the Fourteenth Amendment; and unreasonable exactions or requirements amounting to a deprivation of liberty or property contrary to the due process clause. The present bill makes no reference to the commerce and post roads clauses. It is not alleged that post roads are involved.

The commerce between Atlanta and Chattanooga was interstate, but it was abandoned on November 13, 1929, and is not now proposed to be resumed. The order refusing permission to carry it on is not exhibited, nor in evidence, nor are the reasons for it set forth, nor is any injunction against it prayed. We treat the complainant as carrying on intrastate commerce only. The bill affirms that the complainant is only a private

carrier. The answer avers the contrary. We think the evidence, while meagre on the point, shows the business to be the common carriage of passengers. The powers granted in the charter look to that sort of business. The contracts made for stations and station agents point the same way. The contending for more and better schedules, and the reference to other bus lines as competitors, tend to show that the complainant was running such passenger busses as are familiar now on all the roads. These cannot, of course, carry everybody, but they will carry anybody whom they can accommodate, and who has the price. Though unaided by eminent domain, and though more limited than the railroads in many respects, this business is affected with a public interest and subject to public regulation. Terminal Taxi Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765. In Georgia, the highways, built and maintained by the public, are public property, and (subject to such interest as the United States may have in them as post roads) are subject to state control. "The use of streets and highways is not absolute and unrestricted. Such use is subject to reasonable regulation by the public. * * * From the premise that streets belong to the public the conclusion is drawn that individuals have the right to use the streets * * * for the purpose of transporting passengers for hire. This conclusion does not properly follow from this premise. * * * The ordinary use of the streets, as we have seen above, is for travel, and to this may be added transportation of goods by their owners to and from their residence or places of business. Transportation of travelers or goods * * * for hire does not fall within the ordinary way in which streets are used. Their use for the purpose of gain is special and extraordinary, and may be prohibited or conditioned as the Legislature or municipality deems proper. The conduct of the business of a carrier * * * for hire over the streets of a city is a mere privilege, and not a natural or inherent right of the individual conducting such business. Being a privilege, it can be given or withheld." Schlesinger v. City of Atlanta, 161 Ga. 148, 129 S. E. 861, 866. The law thus announced was supported by reasoning and authorities applicable also to highways. To the same effect, the Supreme Court of the United States speaks: "The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and, generally at least, may be prohibited or conditioned as the Legislature deems proper." Packard v. Banton, 264 U. S. 140, 144, 44 S. Ct. 257, 259, 68 L. Ed. 596. The complainant is, therefore, both engaged in a business that is regulable, and doing that business on the highways by a privilege which may by general law, and that of Georgia, be conditioned or withheld.

The requirement of a certificate of public necessity and convenience is justifiable. Carriers for hire, such as the complainant, whether in all respects common carriers or not, may be put in a legislative class for regulation. It is common knowledge that the expensively improved modern highways, affording a perfect track, untaxed, built, and kept up by the public, have been made the theatre of a passenger and freight carriage business that has greatly modified the traffic system of the country, and has brought about larger, heavier, and swifter vehicles, that tend greatly to damage the pavements, and on narrow ones become a source of great inconvenience and danger. Profits depend on filling the vehicles, and there is constant temptation to make quick schedules and reach stations ahead of competitors. Regulation and restriction is imperative. The Legislature, through its agency, the Public Service Commission, may determine what sort and how many such vehicles can be used on the roads with safety to the pavement, to their passengers, and to other travelers, and may prefer the ordinary use of the highway to the new use of it for extensive carriage business. It may limit the use of its highways for this purpose, just as it has always limited the use of its power of eminent domain, so as to avoid needless and perhaps disastrous multiplication of railroads. The power to select, limit, and prohibit uses of the highways by carriers for hire, which is implied in the requirement of a certificate of public convenience and necessity, is justified both as a regulation of the business, and as a regulation for the protection and safety of the highways. There is thereby no unequal protection of law, but a reasonable classification. Complainant does not show that it is likely to be deprived of any liberty or property without due process of law, but only of a privilege on a highway to which it has no constitutional or statutory right. Reliance as being to the contrary is placed upon Michigan Public Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105, and Frost v. Railroad Commission of California, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457. In the former, Duke was a private carrier of automo-

bile bodies from one state to another, hauling for three patrons only. The Michigan Act, which made all persons carrying for hire on the highway become common carriers with regulation of rates and requirement of certificate of public necessity, was held invalid as to him because a burden on interstate commerce. It was also said, that to convert a private carrier into a public one against his will was contrary to the due process clause of the Fourteenth Amendment, in that it deprived him of his property without due process of law by subjecting it to the use of the public and preventing him from carrying out his contracts of private carriage. In the Frost Case interstate commerce was not involved, but again the carrier was engaged in hauling only citrus fruits for certain producers. It was assumed that the use of the highway by a private carrier for hire was a mere privilege that could be denied to him, but the California Act, which compelled him to get a certificate of public necessity and to become a common carrier, having already been held by the State Supreme Court (197 Cal. 230, 240 P. 26) not to be a regulation of the use of the highway, but of the business of the private carrier, the act so construed was held contrary to the Fourteenth Amendment. The reason was that the private carrier could not be directly forced, against his will, to dedicate his vehicles to the public use and assume the liabilities of a common carrier, nor could this unconstitutional end be attained indirectly by the duress of denying him the use of the roads for the sole purpose of compelling his assent. In neither of these cases was it held that the private carrier has any property right in the highway or in its use, or that regulation of its use would necessarily be unconstitutional. The present complainant is not engaged in interstate commerce and cannot raise any question concerning that. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385. The Supreme Court of Georgia has not held the Georgia Act to be solely a regulation of business and not also a regulation of the use of the highways. But above all, the complainant is not being forced to dedicate its property to public use, but has voluntarily engaged in this business, and its only wish and purpose now is to be allowed to do more of it.

The fees for the certificate and for the license of each vehicle are in the nature of a tax, justified in the reasonable amounts exacted, as recompense for the special use, for the purpose of gain, of the highways. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385.

This brings us to the regulation by restriction of the schedules. Such a regulation appears to have a double source, partly for the convenience of the public in having certain and regularly spaced schedules and partly in the interest of safety on the road in not having too many or too speedy ones. No serious question of the power to regulate in these respects seems possible, unless the regulation be arbitrarily done. Complainant here asserts improper and discriminatory regulation by the commission, but it was done after hearing, and the record of the evidence produced is not presented to us. The commission asserts that the road is the only paved one from Atlanta to Macon, that it is narrow and the most heavily traveled road in Georgia, and that there are nineteen round trip motorbusses now using it daily. Evidently this is more than the traffic demands, as the complainant cannot profitably fill its vehicles. The hours assigned complainant do not seem disadvantageous on their face, and no proof is offered that they are so in fact. The greater number of schedules given competing lines is explained by saying that the number of local schedules given each is equal, the excess schedules being interstate through schedules. It is not apparent that arbitrary discrimination has been practiced against complainant.

From what has been said, it follows that the certificate of public necessity and convenience can be revoked if the complainant fails to observe lawful regulations, or if circumstances arise rendering it detrimental to the public to continue it. The statute permits such revocation only after hearing. Such a hearing is now imminent before the commission. There is no reason to doubt that it will be fairly conducted and result in a just order. No constitutional right of the complainant is to be denied to prevent which this court should act.

It has been urged that the complainant has applied for and obtained a certificate under the act and conducted business under it, and expressly agreed to regulation by the act and the commission, and is therefore estopped to attack the regulation. One cannot, in the same proceeding, both assail and rely upon a statute, nor can he deny its validity while clinging to benefits under it. But when he entirely repudiates it, although previously having endeavored to comply, and the statute is being used wholly to his present disadvantage, it may be assailed as unconstitutional. Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286. It would be unfortunate practically to have some of

these carriers regulated through estoppel and others unregulated because of a successful attack upon the regulations.

Having considered the questions raised on their merits, we conclude that an interlocutory injunction should be refused.