**J. H. McLEAISH & CO. v. BINFORD et al.**

**No. 467.**

District Court, S. D. Texas, at Houston.

Aug. 6, 1931.

Franklin & Blankenbecker and Fulbright, Crooker & Freeman, all of Houston, Tex., for plaintiff and interveners.

James V. Allred, Atty. Gen., and T. S. Christopher and Elbert Hooper, Asst. Attys. Gen., for defendants.

Before HUTCHESON, Circuit Judge, and KENNERLY and BRYANT, District Judges.

HUTCHESON, Circuit Judge.

Complaining of an act of the Texas Legislature, House Bill No. 628 (Acts Tex. 42nd

Leg. [1931], c. 121 [Vernon's Ann. P. C. Tex. art. 827c, §§ 1–6],[1] dealing with the hauling of cotton over the highways of Texas, as unconstitutional and void as to them because violative of the equal protection and due process clauses of the Fourteenth Amendment, plaintiffs brought this suit against the sheriffs and constables, the district and county attorneys of Harris, Ft. Bend, Colorado, and Wharton counties, the officers of the state highway commission, and the Governor and Attorney General of the State of Texas, seeking to enjoin its operation as to them.

Plaintiffs are persons engaged in the business of buying uncompressed cotton in and hauling it over the highways through the above counties to Houston, where they sell or ship it. They haul it in their own trucks which they have license to operate, and which comply in all respects with the general rules and regulations governing the operation of trucks over the highways. They allege in effect that the passage of the bill has been brought about by, and is in the interest of, a combination of Black George and Blifil, the railroads and the interior compresses, and that the real purpose of the bill is, and its effect will be, to prohibit altogether the hauling of uncompressed cotton to Houston, and to practically require all cotton to be first compressed at interior compresses and thence shipped by rail to Houston. That these requirements unjustly discriminate against plaintiffs' business and the commodity with which it has to do in favor of all other businesses and commodities whose full right of access to and use of the highways for the cheaper and more desirable transportation, carriage by truck, is in no manner abridged.

They further allege that, though the act in question is unconstitutional and void as to them, the defendants are threatening, under color of its purported authority, to proceed against them under the penal provisions of the act, and that they will do so unless restrained. Plaintiffs pray for temporary

---

[1] House Bill No. 628.

Section 1. Declaration of Policy.—A serious traffic menace has been caused upon the public highways and public roads of this State because of the use of the highways and roads to truck a substantial part of the cotton crop, and because of the fact that most of the cotton crop of this State moves within a very short period of time. The moving of an even greater proportion of the annual cotton crop each year will increase the traffic menace upon the highways and roads of the State. The operation of cotton trucks upon the public highways and public roads of the State of Texas at the present time has resulted in an unusual and an appalling loss of life of travelers upon the public roads and public highways of the State, has resulted in unwarranted destruction of the public highways of this State, has resulted in unwarranted and dangerous traffic congestion, has created an unusual and unwarranted traffic menace upon the public highways and public roads of the State, has created an unreasonable and unwarranted fire hazard upon the public highways and public roads of the State, and has made difficult and almost impossible the establishing and maintaining of a co-ordinated use of the highways by the general traveling public. It is declared to be the public policy of this State not to permit any one kind or character of truck traffic to be conducted upon the public highways and public roads of the State in such a manner as unreasonably to interfere with and unreasonably to make dangerous the use of the highways by the general traveling public in a reasonable and safe manner, or unreasonably to destroy such highways, and in order to guard against the dangers above mentioned, this law is enacted.

Sec. 2. Definition of "Vehicle."—For the purpose of this act a "vehicle" is every mechanical device in, upon or by which any person or property is or may be transported or drawn upon a public highway excepting devices moved by human power or used exclusively upon stationery rails or tracks.

Sec. 3. It shall hereafter be unlawful for any person, firm, corporation or association of persons to operate or cause to be operated over the public highways of this State any vehicle or combination of vehicles carrying, singly or collectively, a load of more than ten (10) bales of cotton unless all of the bales of cotton carried in or on any such load shall have been compressed to a density of twenty-two (22) pounds per cubic foot or greater.

Sec. 4. It shall hereafter be unlawful for any person, firm, corporation or association of persons to operate or cause to be operated any vehicle or combination of vehicles carrying singly or collectively a load of more than ten (10) square bales of compressed cotton or more than twenty (20) round bales of compressed cotton for a distance of greater than fifteen (15) miles over the public roads and public highways of this State unless said vehicles or combination of vehicles shall be equipped with a body or bodies construed [constructed] so as to completely enclose the load or loads carried thereon from the bottom, sides and ends, and unless all the floors, tops, sides and ends of such vehicle, or combination of vehicles, so enclosing such load or loads, shall be entirely constructed of wood, not less than one and one-half (1½) inches thick, or of iron, or of steel, or of a combination of such wood and/or iron, and/or steel, to protect the load or loads from being spilled upon the roads or highways.

Sec. 5. The provisions of this act shall not apply to the operation of vehicles or combination of vehicles within an incorporated city or town in this State.

Sec. 6. Any person, association of persons or corporation violating any provision of this act shall be guilty of a misdemeanor and upon conviction shall be fined in any sum not less than one hundred dollars ($100) or more than five hundred dollars ($500) and each day such vehicle or combination of vehicles is operated contrary to the provisions of this act shall constitute a separate offense.

Sec. 7. If any part of this act shall be declared unconstitutional by the courts, such holding shall not affect the remaining portions of this act.

Sec. 8. The fact that the present laws of the State of Texas do not adequately protect the lives and property of the traveling public and do not adequately protect the highways of the State from unwarranted destruction and do not provide a means by which a reasonable and co-ordinated use of the highways of the State may be guaranteed to those using such highways creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and said rule is hereby suspended, and this act shall take effect and be in force from and after its passage, and it is so enacted.

injunction pending the suit, and for permanent injunction upon final hearing.

Upon plaintiffs' request the application for temporary injunction was set for hearing, a statutory court was convened, and on the date set for hearing a hearing was had on the pleadings and affidavits. At this hearing there appeared by leave, in addition to the plaintiffs and defendants, certain interveners, all of whom make common cause with plaintiffs as to the purpose and effect of the act, and its unreasonable and discriminatory character as to them. These represented three classes: (1) interior cotton merchants in the business of procuring uncompressed cotton and hauling it upon their own trucks, or trucks of private carriers engaged by them, to Houston for sale and/or shipment. (2) Individual farmers who raise cotton in the interior and haul it and the cotton of others uncompressed to Houston, for sale and/or shipment there. (3) Persons owning trucks, engaged as private carriers in the business of hauling over the highways uncompressed cotton as well as other commodities.

The defendants' pleadings meet the issues tendered by plaintiffs and interveners by denials and by appropriate affirmative allegations, and in limine raise the question of the power of the court, in view of the generally permissive, rather than of right, character of highway use, to accord plaintiffs relief.

█ Wide as the power of the Legislature over highways is, we have no manner of doubt that, if it arbitrarily interferes with the right of one of the public to haul his goods over it, whether the hauling is done for himself or for hire for others, that one may be, as he has uniformly been, accorded in the national courts, relief. Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264; Buck v. Kuykendall, 267 U. S. 314, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Frost v. Railroad Com., 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Michigan v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283.

At the hearing plaintiffs and interveners established, indeed the point was not contested, but was urged by defendants' counsel as one of the prime accomplishments of the act, that the limitation of the load of uncompressed cotton to ten bales would practically drive that kind of cotton from the highways. They proved that, if cotton must first be hauled to an interior compress, and compression charges, of no benefit whatever to cotton hauled by truck to market, paid before it is rehauled to Houston in the inclosed vehicle prescribed by the Act for hauling cotton in more than ten-bale lots more than fifteen miles, it would add so greatly and so prohibitively to the cost of hauling cotton by truck to the Houston market, as that it would to a great extent compel its carriage there by rail, and thus the act would operate to drive cotton almost, if not altogether, off of the highways.

Their proof, as well as that offered by the state, also established that the legislative genesis of the act was two bills, one to compel cotton hauled by truck to be compressed in the county in which it originated, the other at the first compress which it reached in transit, and that, if the act is enforced, it will result directly and greatly to the benefit of the interior cotton compresses and the railroads.[2] According to the affidavits of compress and railroad employees offered by the defendants and not disputed by plaintiffs, both railroads and compresses have suffered greatly in loss of business, due to the fact that cotton, instead of as formerly going to the interior presses for compression and from there to the ports by rail, has in its uncompressed state taken to the highways.[3]

[2] The affidavit of Calloway, general counsel, for Interior Compresses of Texas and Oklahoma, in which, among other things, after stating that, while attending a session of the Legislature on business of his clients, he discussed the original bills with their authors, his firm drew a tentative bill, and he appeared before committees in the interest of the bill as it finally passed. That while he discussed the bill before the committees, not from the viewpoint of the good that it would do his clients, but the state at large, he frankly admitted that he did state to the committee that the bills, if passed, would in their provisions be a benefit to the interior compresses.

Franklin's affidavits, to which were attached the two original bills, was to the effect that Calloway, counsel, and Brown, the secretary of the Interior Compresses, were constantly at work before the Legislature in the interest of the bill as finally passed. That in his argument before the committee Calloway stated that the passage of the bill would save and preserve the interior compresses of Texas.

S. G. Reed, freight traffic manager of the Texas & New Orleans Railroad, by affidavit deposed as to the great increase of the cotton movement on trucks from 414,000 pounds in 1928–1929, to 1,189,000 in 1930–1931 and deposed: "This clearly indicates to my mind that in the event the bill in question shall not be effective within a short time the public highways leading to the ports will be almost completely monopolized by trucks hauling cotton from August to October inclusive."

[3] Affidavit of Reed, supra. Affidavit of Lawrence Westbrook to the effect that the destruction of the interior cotton market is an economic catastrophe, and that the disruption and destruction of the local

Plaintiffs and interveners also undertake to show, and by their own affidavits do show, that the lugubrious chant of highway woes which forms the theme song of the bill are not real, but fancied ills, and that there is nothing in the nature of cotton, or the manner in which it is carried over the highways, which constitutes it or its carriage a particular menace, or justifies or would support a legislative classification as a basis for special restrictive treatment, harsh and prohibitive of highway use as to it, while leaving all other commodities, though similarly situated as to the use of the highways, untouched by legislation. Their affidavits meet the recitations in the preamble of the act at every point, and if the question were before us for decision as a fact question in an ordinary lawsuit, upon the affidavits of plaintiffs alone we should be inclined to the opinion that the Legislature, having formed the purpose to put cotton off the highways, reached its subsequent conclusion about the menace which it causes by letting the wish be father to the thought, and that, to ears attuned as theirs were to find proofs according with their purpose to prohibit, trifles light as air became confirmations strong as proof from Holy Writ.

But we are not so situated, for, in the first place, since the act deals with the regulation of the public highways, a matter fully within the compass of legislative powers (Buck v. Kuykendall, 267 U. S. 314, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Carley v. Snook, 281 U. S. 70, 50 S. Ct. 204, 74 L. Ed. 704, 68 A. L. R. 194; Southern Motorways v. Perry (D. C.) 39 F.(2d) 145; Smith v. Cahoon, supra; Packard v. Banton, supra; Frost v. Railroad Com., supra; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; Silver v. Silver, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221; Fifth Ave. Coach Co. v. New York, 221 U. S. 467, 31 S. Ct. 709, 55 L. Ed. 815; Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966) every presumption springs in its favor to support the bill against attack, unless on its very face the classification, either as to the basis of it, or the means adopted to effect the desired end, appears arbitrary, unreasonable, or oppressive, or, though no arbitrariness or unreasonableness is patent, lying there latent it is exposed and brought to view by proof.

So circumstanced, plaintiffs on the issue of the basis of classification have a burden too heavy to be borne, when, in addition to the presumptions which exist in its favor, they are confronted by affidavits offered by defendants, which, taken separately and as a whole, with their specific instances of traffic congestion, injury to the highways and to person and property moving thereon, of fire hazard and of load spillings attendant upon the movement of cotton over the highways, together with proof as to its characteristic package or packages, the method of its preparation and hauling, the character of trucks in which it is usually hauled, the manner of their use of the highways, the size of the loads, the seasonal and congested character of the movement, not only strongly support, but in our opinion, as the matter stands on the proofs adduced at this hearing, put beyond question the general power of the Legislature to deal with cotton in its use of the highways as a commodity having peculiar characteristics with relation to transportation generally, and highway use in particular, and to make reasonable regulations for its movement which will hedge that movement about with reasonable restrictions, having due relation to the lawful end desired without at the same time being obliged to take into account or make provision in the act for other classes of commodities moving on the roads. Radice v. People of State of New York, 264 U. S. 292, 44 S. Ct. 325, 68 L. Ed. 690; Weaver v. Palmer, 270 U. S. 412, 46 S. Ct. 320, 70 L. Ed. 654.

Since, however, such restrictions must have a due and just relation to the supposed mischiefs to be avoided, the injurious character of highway use, and may not be arbitrarily designed under the guise of reasonable regulations, to hamper and prohibit in a discriminatory way the business of those who use the highways (Smith v. Cahoon, supra), plaintiffs may still have relief against the statute, if, though the basis of the classification is reasonable, the Legislature has used means having no just and fair relation to the mischief aimed at, means which, though by a skillful bewording they do appear to regulate, in reality destroy. For equally as well settled as the principle that legislative discretion to classify for regulation operates within wide limits in matters clearly within its jurisdiction, is its corollary, that the right to classify conceded restrictions imposed upon the class must not be arbitrary discriminations against that class in favor of others, having no just relation to the basis of the classification, the lawful ends desired, and must not be unreasonably and oppressively drastic in their overwideness of sweep. But

interior markets has been largely contributed to by the heretofore unequaled regulation of the transportation of cotton by motortruck.

such restrictions must be reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon the class; must have due relation to the basis of the classification and the ends desired, and must not be designed and effective to do indirectly what the Legislature may not directly do. Smith v. Cahoon, supra; Frost v. R. R. Com., 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; Weaver v. Palmer Bros., 270 U. S. 402, 46 S. Ct. 320, 70 L. Ed. 654; Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Pa. Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321; Burns Baking Co. v. Bryan, 264 U. S. 512, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661.

With the admonition to plaintiffs to look to their own house lest it be said that their suit, though not in form, is in fact the suit of the cotton interests at the ports; that though the hands of plaintiffs are indeed the hands of Esau, the voice of plaintiffs is the voice of Jacob, the "smooth" one, the "supplanter," we put aside frictional suggestions of legislative cats pawing by interests favorable to the bill as calculated to generate more heat than light.

We put aside, also, because plaintiffs and interveners handle only uncompressed cotton, and no handler of compressed cotton is here complaining, consideration of the question much argued at the bar, whether the provisions of section 4, which deal entirely with compressed cotton, are, as to handlers of such cotton, valid regulations or invalid as to them because unreasonable, oppressive, and discriminatory.

We come then to a consideration of the controlling question in the case, whether the statutory means employed are reasonable and appropriate to the permitted end, or are, as to plaintiffs and interveners, handlers of uncompressed cotton but a pretense at regulation masked behind which prohibition and discrimination stalk.

██ Plaintiffs insist that the act, while ostensibly regulatory, is arbitrarily discriminatory against, in fact is prohibitive of, the movement of their cotton to market over the public roads; defendants that its provisions have due relation to, and, without undue restraint upon or discrimination or prohibition against owners and haulers of cotton, are means promotive of, the public ends for which the act was passed. It is here that this case comes to its crux.

In its solution it must be kept in mind that, though the motives, purposes, and intent of the Legislature are wholly immaterial, if the complained of action has a reasonable relation to regulating traffic on the highways, the end which the bill purports to attain, the fact that some incidental or accidental result in keeping with the declared lawful purposes may flow, as, for instance, the reduction of traffic volume, will not save the act if its real purpose, as tested by its effect and operation, is to accomplish an unlawful end, the imposition of oppressive discrimination on a business using the roads. Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455; Brimmer v. Rebman, 138 U. S. 78, 11 S. Ct. 213, 35 L. Ed. 862; Real Silk Hosiery Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982. Disregarding pretense, subterfuge, and chicane, courts must, looking through form to substance, ascertain the true purpose of a statute, neither from its recitals of purpose nor from the evidence as to what the real purpose of its authors and backers was, but from the operation and effect of the statute as applied and enforced. Smith v. St. Louis & S. W. Ry. Co., 181 U. S. 248, 21 S. Ct. 603, 45 L. Ed. 847; Lochner v. N. Y., 198 U. S. 64, 25 S. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Bailey v. Drexel, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432; Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446; Henderson v. Mayor of New York, 92 U. S. 259, 23 L. Ed. 543; Chy Lung v. Freeman, 92 U. S. 275, 23 L. Ed. 550; Frost v. R. R. Com. Co., supra.

██ So approaching the statute in the light of the fact which on this record cannot be gainsaid, indeed it was established by the affidavits of defendants, and their argument presses it upon us as a beneficial effect of the statute in relieving traffic conditions, that it will drive uncompressed cotton from the highways; and in the light of the further fact which we think the whole evidence establishes, that forcing cotton to be compressed in the interior, if it is desired to move it to the port in more than ten bale lots, will result in its being hauled there by rail, we think it plain, and we so find, that the statute is not a regulation of the use of the highways, but is a regulation as to plaintiffs, of their business of hauling uncompressed cotton with the prohibitory result as to them,

of compelling compression in the interior and hauling to market by rail; that instead of making real provision having definite relation and being reasonably adapted to the elimination of the abuses set out in the preamble to the bill, the existence of which on this hearing we have found the proofs fairly support, the statute does no such thing, but, under the guise of regulating, it prohibits owners of cotton from under reasonable regulations hauling their cotton to market, compressed or uncompressed as they may desire, while it leaves the highways open to haulers of all other commodities. This we think the Legislature may not do.

Upon these findings, the case in the end comes to this, if the Legislature, in the interest of highway regulation in order to reduce the traffic thereon, could have passed an act forbidding the use of the highways to uncompressed cotton, and compelling it to be compressed in the interior and hauled to market by rail, it could have passed the act in question, for that is what the act does, and, judging its purpose by its effect, what it was designed to do. We think it plain that such an act would not have been valid, but because unduly discriminatory against those in the business of handling and/or hauling cotton, and unduly favoring all others whose goods are trucked along the highways, would have been beyond the power of the Legislature to enact. Smith v. Cahoon, supra.

Though then, upon the present record as made by preamble and by proof, we believe that the Legislature had the power to classify carriers of cotton compressed and uncompressed and impose regulations and restrictions upon their use of the roads reasonably related to and calculated to remove the dangers and abuses which the Legislature finds to be attendant upon that movement, we find that the act in question is oppressive as to plaintiffs and interveners because it operates to unreasonably embarrass and restrict to the point of prohibition a legitimate business entitled equally with others to the use of the public roads; and, so finding, we grant the temporary injunction prayed.