**LISICHIN et al. v. ANDREWS, Industrial Commissioner of New York.**

District Court, S. D. New York.
Dec. 9, 1938.

Samuel Rosenzweig, of New York City, for plaintiffs.

John J. Bennett, Jr., Atty. Gen. (Abraham H. Brodsky, Asst. Atty. Gen., of counsel), for defendant.

Before CHASE, Circuit Judge, and PATTERSON and LEIBELL, District Judges.

## PER CURIAM.

Suit was brought by three concerns in the business of manufacturing articles of metal bedding out of second-hand materials to enjoin enforcement of a statute passed in 1937 by the New York legislature prohibiting the use of second-hand materials in making any article of bedding. New York Laws of 1937, ch. 830, in effect July 1, 1938. The plaintiffs claim that the statute, as applied to them, violates the Fourteenth Amendment, U.S.C.A. Const. A demand for preliminary injunction was denied, the plaintiffs having presented no proof beyond the verified bill of complaint and the defendant having denied the material allegations of the bill. D.C., 23 F.Supp. 657. The case then came on for final hearing on the merits and was sent to a special master to take testimony and report. The special master took testimony, made findings of fact and conclusions of law, and reported that in his opinion the act, insofar as it applied to the plaintiff, violates the due process clause of the Fourteenth Amendment.

For many years prior to 1937 the State of New York regulated the use of second-hand materials in the manufacture of bedding, including certain articles of metal bedding. By Laws of 1918, chapter 369, the use of second-hand material in metal springs, metal couches, metal folding beds and metal cots, as well as in mattresses, pillows and quilts, was forbidden unless such material was thoroughly sterilized and unless a distinctive yellow tag bearing the words "second hand" was affixed to the articles. The sterilizing and tagging requirements were stiffened by later acts, providing for permits to use sterilization process, registration, inspection of premises, enforcement by the Industrial Commissioner and the like, and the operation of the law was broadened so as to cover ordinary metal beds and other articles. Laws of 1920, chapter 590; Laws of 1933, chapter 408; Laws of 1934, chapter 771; Laws of 1936, chapter 799. These regulatory statutes are embodied in article 25-A of the General Business Law, Consol. Laws, c. 20 (sections 383–389), and the plaintiffs find no fault with them. In 1937 the New York legislature added an amendment whereby the use of second-hand material in the manufacture of bedding was forbidden altogether. Laws of 1937, chapter 830, in effect July 1, 1938; General Business Law, section 389-a. The ban clearly covers metal beds, metal springs and other metal bedding, by virtue of the definition of bedding already contained in article 25-A. This is the statute complained of in the present suit. It reads: *"Prohibition against the use of second-hand materials.* On and after the first day of July, nineteen hundred thirty-eight it shall be unlawful to use, in making for sale any article of bedding or any article of upholstered household furniture or in the preparation of any material used or commonly used for filling such articles of bedding or furniture, any material which is herein defined as second-hand or to use any material for any such purpose which has been exposed to infectious or contagious disease or which is unclean or unsanitary and it shall be unlawful to sell any article covered by the provisions of this article which has been made in whole or in part of materials the use of which is herein declared to be unlawful. Nothing herein contained shall be deemed to annul any provision of this article which relates to the sale of an article 'as is' which has not been remade or renovated, or to the sale of an antique, or to a sale at public auction, or to a private sale from the home of an owner direct to the purchaser or to remaking or renovating an

884

article for the owner's own use and not for sale. Upon this act taking effect it shall repeal any provision of this article or any provision of any law, which is in direct conflict with the provisions of this act."

The act of 1937 also added section 389-b, to the effect that if section 389-a should be held unconstitutional, the remainder of article 25-A should not be affected.

The 1937 statute is supported by the defendant as a measure to safeguard public health and also as a measure to protect purchasers from fraud.

The plaintiffs are in the business of making metal beds, metal bedsprings and other articles of metal bedding out of second-hand materials, using new materials only for repairs and refinishing. Old beds and springs are remade or renovated, and the finished products look like new. Used metal beds and metal springs are purchased from junk dealers and peddlers at low prices. These are first sterilized by immersion for twenty-four hours in a bath made of one-half pound or more of caustic soda to a gallon of water. This process is one of the sterilizing processes approved by the Industrial Commissioner, and it is necessary not only to sterilize but also to take off the old paint. The old paint must be removed if the articles are to be refinished to look like new. The caustic soda process is universal in the industry. The articles are then washed, repaired, painted and finished. The tags required by statute are fastened on and the articles wrapped in excelsior and paper. They are sold and delivered to jobbers and retail stores in New York and elsewhere, the wholesale prices being about one-half the wholesale prices charged for new articles of the same sort. An ordinary purchaser could not tell them from new articles but for the distinctive tag required by law. They are practically as good as new articles of the same character, saving differences in style and possible weakening of bedsprings. The plaintiffs' factories are in New York City and they have built up a substantial trade in renovated metal bedding.

The medical evidence in the case is to the effect that there is no possible menace to public health in a used article of metal bedding which has been subjected to the caustic soda process prescribed by the Industrial Commissioner and used by the plaintiffs and others in the business. Dr.

Charles E. A. Winslow, Professor of Public Health at the Yale Medical School, testified that there was no serious danger of contagion even in the use of unsterilized second-hand metal bedding, a fact made apparent by the use of beds by one person after another in hotels, boarding houses, trains and hospitals, and that with the caustic soda sterilizing process there is complete sterilization and no vestige of danger. The testimony of Dr. Bercovitz indicates that danger or nuisance from bedbugs or lice on the articles in question is not appreciable. The testimony of these thoroughly qualified experts on public health stands uncontradicted.

There is no proof in the record that renovated articles of metal bedding have been passed off on the public as new. The statutory tag is of course adapted to prevent any such deception. While it is possible to remove tags, removal is a misdemeanor and there is nothing in the record to indicate the prevalence of any such abuse.

The special master took the view that the facts bring the case within Weaver v. Palmer Brothers Company, 270 U.S. 402, 46 S.Ct. 320, 70 L.Ed. 654. We are of the same opinion. The Supreme Court there held that a statute which forbade the use of shoddy in bedding violated the due process clause of the Fourteenth Amendment. The evidence showed that sterilization of shoddy eliminated any danger to public health from the use of shoddy, and it was held that the banning of shoddy could not be sustained as a health measure. And since the act provided for the tagging of articles containing other second-hand materials, it was held that the same regulation might be applied effectively to shoddy-filled articles and that the prohibition against use of shoddy could not be supported as a measure to prevent deception. In the present case the evidence that there is no danger to public health in the use of sterilized second-hand materials in metal bedding is fully as strong; indeed there seems to be no difference of opinion on the point. There is no chance that thorough sterilization will be skipped, because the effort to make the articles look like new, which is the prime essential in the business, will not be successful without it. On the record in this case, the legislature could not reasonably say that there was danger to public health from the use of sterilized second-hand material in metal beds, metal springs and the other articles

of metal bedding. The situation as to possibility of deception and prevention by tagging is practically the same as in the Weaver case. There being no proof of deception having actually been practiced in the sale of metal bedding which is second-hand and made to look like new and the tagging requirements being fairly adapted to forestall deception, it is going too far to prohibit a useful and lawful business on the vague chance that deception might possibly be practiced. We think that the special master was correct in saying: "Here the business is useful. It provides cheap articles of metal bedding for the poorer classes of the public. The articles can be seen by the purchaser for what they are; there is nothing concealed from view, as in the case of upholstery or mattresses. Except for visible differences in style, and except for the possibility of some weakening of the springs, the articles are substantially as good as new articles of the same character. They involve no appreciable danger to health. The sole injury to the purchaser through deception would therefore be that the purchaser would pay for a useful article more than he reasonably should pay. There might also be injury to manufacturers of new articles through competition with second-hand articles represented to be new. Complete prohibition of the business for the purpose of preventing these possible results is in my opinion arbitrary and violative of the due process clause."

The defendant offered in evidence letters, memoranda and a presentment submitted to the legislature and governor when the 1937 act was under consideration. These papers show that the problem presented was the problem of stuffed articles of bedding such as pillows, mattresses and comfortables. From these papers the legislature evidently concluded that the manufacture of such articles out of second-hand materials brought abuses which were not cured by regulation and could be met only by absolute prohibition

of second-hand materials. But the documents contain scarcely a mention of metal bedding. They by no means show the prevalence of abuses in the manufacture of metal bedding or any failure of existing regulation of such manufacture. There is an obvious difference between stuffed articles of bedding and articles of metal bedding in the sanitary aspect and also as to ease of deception, and the case before us has to do only with metal bedding.

There is no body of legislative opinion in support of the statute under consideration. Thirty-six states have laws regulating manufacture and sale of bedding, but in only two, New York and Connecticut, do the regulations apply to articles of metal bedding. The Connecticut act applies to no metal bedding except springs, and it allows the sale of springs made of used materials, subject to sterilization and tagging.

We are of opinion that section 389-a of the General Business Law, to the extent that it prohibits the use of second-hand materials in articles of metal bedding as manufactured by the plaintiffs, despite sterilization and tagging, violates the due process provision of the Fourteenth Amendment and is invalid. The businesses conducted by the plaintiffs will of course still be subject to the sterilizing and tagging requirements as well as to the other safeguards prescribed in sections 383 to 389, inclusive. And we say nothing as to the application of section 389-a to other kinds of bedding. The exceptions to the special master's report will be overruled and the report confirmed. The findings and conclusions of the special master will be adopted as those of the court. The plaintiffs will have an injunction restraining the enforcement against them of so much of the statute as prohibits them from using second-hand materials in the manufacture or renovating of metal beds, metal springs and other articles of bedding made of metal.