**SPROLES v. BINFORD et al.**

No. 476.

District Court, S. D. Texas, Houston Division.

Sept. 30, 1931.

Frank H. Rawlings and Swartzberg & Rawlings, all of Fort Worth, Tex., Chas. I. Francis, Weeks, Morrow, Francis & Hankerson, and Mathis & Caldwell, all of Wichita Falls, Tex., Fulbright, Crooker & Freeman, of Houston, Tex., and J. B. Dudley and J. B. Barnett, of Oklahoma City, Okl., for complainant and interveners.

James V. Allred, Atty. Gen., of Texas, and T. S. Christopher and Elbert Hooper, Asst. Attys. Gen., of Texas, W. L. Cook, of Houston, Tex., and Albert Reed, of Dallas, Tex., for respondents.

Before HUTCHESON, Circuit Judge, and WEST and KENNERLY, District Judges.

KENNERLY, District Judge.

Alleging that the matter in controversy exceeds the sum or value of $3,000, and that it arises under the Constitution and laws of the United States, complainant, Ed Sproles, a common carrier, engaged, under the name of Sproles Motor Freight Lines, in transporting commodities in motor vehicles over the highways of Texas, sues herein James V. Allred, Attorney General of Texas, and numerous other law enforcement officers of the state, including T. Binford, sheriff of Harris county, and a resident citizen of this judicial district, to enjoin the enforcement, as to him, of an act of the Legislature of Texas, having for its purpose the regulation, etc., of the operation of vehicles upon the public highways of Texas (chapter 282, approved June 11, 1931, General Laws, Forty-Second Legislature, page 507, and generally referred to as House Bill No. 336 [Vernon's Ann. P. C. Tex. art. 827a, § 1 et seq.]). Complainant charges that such act, as to him, violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution, and prays for temporary restraining order, interlocutory injunction pending final hearing, and permanent injunction upon final hearing. This is a hearing, after due notice to respondents, upon pleadings and affidavits, of such application for interlocutory injunction, before a court convened under section 380 of title 28, USCA, at which hearing both complainant and respondents appeared by counsel. Upon leave granted, several persons intervened, appeared at such hearing by counsel, and in like manner attacked such act, but in each instance from a slightly different angle.

Complainant alleges that in his business as such common carrier he has about 100 vehicles which would be affected by the enforcement of the provisions of such act, maintains large warehouses, has many employees, and has an investment of more than $264,000; that he has fifteen combinations of vehicles, etc., on which he may carry loads in excess of 7,000 pounds, and fifteen combinations of vehicles which are in excess of a total length of 45 feet, all representing an investment of more than $115,000; that the operation of such vehicles is

prohibited by the provisions of said act, and same will be made valueless thereby, and that no other type of vehicle can be profitably operated in complainant's business; that he has paid 1931 annual highway license fees, aggregating approximately $10,000, and is paying the state of Texas a large gasoline tax; that he has certain existing contracts for the transportation of commodities over the highways, which he will be unable to fulfill and perform under the provisions of said act; that his rates are fixed by the Railroad Commission of Texas, and he has no authority to alter or change same, and that operation under said act will be unprofitable, and that complainant's business will virtually be destroyed and confiscated.

Interveners, Tennessee Dairies, Inc., engaged in the intrastate business of daily gathering and marketing dairy products, Southern Transportation Company, engaged both in the intrastate and interstate business of operating a motor freight line, Western States Grocery Company, Inc., engaged in the wholesale grocery business and hauling and transporting commodities in connection with its business, Merchants' Fast Motor Lines, Inc., engaged as a common carrier of commodities in intrastate business, Bull-Stewart Equipment Company, Inc., engaged in transporting Ford automobiles over the highways under a contract with the Ford Motor Company, Jno. B. Barbour Trucking Company, Inc., engaged as a private carrier of oil field equipment and farm machinery, G. F. Sproul, the owner of certain trucks and engaged as a private carrier, and the Yellowcab Transit Company, engaged in interstate business only and operating a commercial motor freight line for the transportation of commodities, make similar allegations (but with varying amounts and numbers) with respect to their businesses, and the injury that will be inflicted upon them by the enforcement of such act. Substantially all of them adopt the pleadings of complainant.

Intervener W. T. Stevens alleges that he is engaged in the business of transporting uncompressed cotton for hire in trucks owned by him; that he has a contract with Mager Cleaver & Co., under which he is to transport all uncompressed cotton owned by such company, and has acquired approximately forty trucks, all equipped with semitrailers, and representing an investment of about $50,000; that enforcement of such act will bring about a cancellation of his contract; that he knows of no commodity transported over the highways to which section 3(f) of such act (Vernon's Ann. P. C. Tex. art. 827a, § 3(f) can apply other than uncompressed cotton, and charges that said act has reference to uncompressed cotton alone; that the enforcement of this act will cause complete destruction of the business of intervener. He also alleges that this legislation is designed and purposed to favor the interior compresses in the compressing, and the railroads in the transportation, of cotton, and to promote their business and welfare, and to annihilate and destroy the business of transporting uncompressed cotton over the highways.

A statement of the contention of the intervener Wichita Falls Motor Company appears later herein.

The complainant and all interveners allege that respondents are threatening to enforce such act, and, unless restrained, will do so, or attempt to do so, and will arrest them and their drivers and other employees, and subject them to numerous prosecutions, causing them large damage and heavy expense, etc.

Respondents, by their pleadings, join issue with complainant and interveners.

1. The act in question, after defining certain terms used therein, provides that no vehicle exceeding a total outside width of 96 inches, including any load thereon, exceeding a height of 12 feet 6 inches unladen or with load and including load, and exceeding a length of 35 feet, or a combination of vehicles coupled together exceeding a length of 45 feet, shall be allowed to pass over the public highways of Texas. There are a number of exceptions and exemptions, and these exceptions and exemptions, and certain provision as to weight and packing of loads, form the basis of the main complaint of complainant and interveners, and for convenience their terms and provisions are set forth in the discussion of such complaint.

The act also contains certain other provisions with respect to the load extending beyond the front and rear, and over the sides, of the vehicle, prescribes the rate of speed, has certain safety provisions with respect to the display of flags and lights, equipment with brakes, signal horns, etc., and makes certain requirements respecting parking vehicles upon the highways. It makes a violation of the act a misdemeanor, with a fine for the first violation, a larger fine or imprisonment in the county jail for a second violation, and a still larger fine and longer imprisonment for a third or subsequent violation.

■ Unquestionably complainant and each of the interveners (except the Wichita Falls Motor Company), on the face of their pleadings, state a cause of action of which this court has jurisdiction. Smith v. Cahoon, 283 U. S. 554, 51 S. Ct. 582, 75 L. Ed. 1264; Buck v. Kuykendall, 267 U. S. 314, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Frost & Frost Trucking Co. v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457.

■ The Wichita Falls Motor Company is not using the highways. The basis of its complaint is that it is now, and has been for many years, engaged in the manufacture and sale (frequently on credit) of a certain type or certain types of vehicles (and yet has many on hand), which, under the act, it alleges cannot be used on the public highways of Texas, and it therefore cannot sell them, nor collect for those already sold, and that its business will be wrecked by the enforcement of this act. It relies upon Pierce v. Society of the Sisters, 268 U. S. 532, 45 S. Ct. 571, 69 L. Ed. 1077, 39 A. L. R. 468, and other similar cases. Such cases, however, are, we think, distinguishable from the case here presented by motor company. We think the injury alleged by it is too remote to bring it within the rule of such cases. Reference hereinafter to interveners will be understood to be interveners other than such motor company.

■ That this Act, in so far as it regulates, or seeks to regulate, as stated above, the size of vehicles and loads, the speed thereof, and makes provision for the safety of the public and the protection of the highways, and considered without regard to the exceptions, exemptions, and other provisions complained of, is well within the power of the Legislature, we need not stop to discuss. Hendrick v. Maryland, 235 U. S. 622, 35 S. Ct. 140, 59 L. Ed. 390; Morris v. Duby, 274 U. S. 140, 47 S. Ct. 548, 71 L. Ed. 967.

■ 2. But complainant and interveners, citing Smith v. Cahoon, 283 U. S. 554, 51 S. Ct. 582, 75 L. Ed. 1264, and the line of cases there cited and discussed, and invoking the principles there laid down, attack sections 3 (a), 3(c), and section 5(b), (Section 7) of the act (Vernon's Ann. P. C. Tex. art. 827a, §§ 3(a, c), 5(b) as arbitrary, oppressive, unreasonable, and discriminatory, and, as to them, void, because violative of the equal protection and due process clauses of the Fourteenth Amendment to the Federal Constitution. The wording of the pertinent parts of sections 3(a), 3(c), and 5(b) is as follows:

"Sec. 3. (a) No vehicle shall exceed a total outside width, including any load thereon, of ninety-six (96) inches, except that the width of a farm tractor shall not exceed nine (9) feet, and except further, that the limitations as to size of vehicle stated in this section shall not apply to implements of husbandry, including machinery used solely for the purpose of drilling water wells, and highway building and maintenance machinery temporarily propelled or moved upon the public highways."

"Sec. 3. (c) No motor vehicle, commercial motor vehicle, truck-tractor, trailer, or semi-trailer shall exceed a length of thirty-five (35) feet, and no combination of such vehicles coupled together shall exceed a total length of forty-five (45) feet, unless such vehicle or combination of vehicles is operated exclusively within the limits of an incorporated city or town."

"Sec. 5 (b) The limitations imposed by this Act as to length of vehicle or combination of vehicles and weight of loads and of height of vehicle with load shall not apply to vehicles when used only to transport property from point of origin to the nearest practicable common carrier receiving or loading point or from a common carrier unloading point by way of the shortest practicable route to destination, provided said vehicle does not pass a delivery or receiving point of a common carrier equipped to transport said load, or when used to transport property from the point of origin to point of destination thereof when the destination of such property is less distant from the point of origin thereof than the nearest practicable common carrier receiving or loading point equipped to transport such load; provided, however, that in no event except by special permit, as hereinabove specifically provided, shall the length of said vehicles exceed fifty-five (55) feet or the weight of such loads exceed fourteen thousand (14,000) pounds; and provided, further, that the limitations imposed by this Act upon weight per inch width of tire shall apply to all such vehicles and loads."

When properly construed (and this act has not been construed by Texas courts, and in construing it, we must look to the legislative intent, and, if open to more than one construction, give it a construction within the power of the Legislature to enact), we do not believe section 3(a) must fall under this attack. The term "implements of husbandry temporarily propelled or moved upon

734

the public highways" clearly has reference to the movement, in the usual course of farm work, from farm to farm, etc., of such implements as tractors, plows, trucks, hay presses, etc., sometimes upon their own power, and not to the transportation of such farm implements in the manner insisted by complainant. Likewise, the exemption of machinery for drilling water wells and road-building machinery, when temporarily moved, without doubt refers to the infrequent movement of such machinery from one place of operation to another, which movements are of a special kind, temporary in their nature, and not a constant use of the highways. We entertain no doubt as to the power of the Legislature to classify these vehicles and these operations thereof, and in this manner except and exempt them from certain of the provisions of this act. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 76, 31 S. Ct. 337, 55 L. Ed. 377, Ann. Cas. 1912C, 160, and cases there cited, and numerous cases which follow it. Such exceptions and exemptions apply alike to all persons (including complainant and interveners), do not unlawfully discriminate against complainant and interveners, and present a case clearly distinguishable from the authorities relied upon by them.

The complaint respecting section 3(c), exempting vehicles operated in incorporated cities and towns from certain requirements of the act, may be disposed of as not well taken by referring to Hayes v. State of Missouri, 120 U. S. 68, 7 S. Ct. 350, 30 L. Ed. 579; Packard v. Banton, 264 U. S. 142, 44 S. Ct. 257, 68 L. Ed. 607; Radice v. New York, 264 U. S. 295, 44 S. Ct. 325, 68 L. Ed. 695; and to the later provisions of section 12 of the act.

This brings us to a discussion of section 7 (section 5(b) of the act. The substance thereof is that the limitation as to length of vehicles or combination of vehicles, height of vehicles with load, and weight of loads, shall not be applicable to vehicles used only to transport property from point of origin to the nearest practicable common carrier receiving or loading point, or from a common carrier unloading point by the shortest route to destination. It also contains the provision that a common carrier (equipped to transport such load) delivery or receiving point shall not be passed in the course of such transportation, and the further provision that, when the distance from point of origin to destination is less than from point of origin to the nearest practicable common

carrier receiving or loading point. equipped to transport the load, the act shall not be applicable. There is a further provision that in no event, except by special permit (presumably under section 2 of the act), shall the length of vehicles so engaged exceed 55 feet or the weight of the load exceed 14,000 pounds. There is also a provision that the weight limitation based upon per inch width of tire shall apply in any event to such loads.

This is another classification made by the Legislature in this act, which neither from the act itself nor the evidence before us appears to us to be beyond the power of the Legislature to make. Lindsley v. Natural Carbonic Gas Co., supra, and other authorities cited. The evidence shows that the average distance of the hauls under this section will be approximately four to eight miles. The evident purpose of the Legislature is to permit the operation of exceptional vehicles in such areas by persons (including complainant and interveners) who may desire to transport commodities from the point of origin (which would include the farms and the manufacturing plants) to common carrier receiving points (which would include Complainant's receiving point, he being a common carrier), and from common carrier unloading points to points of destination, etc. In other words, short hauls, in which the highways are used in this manner to a limited extent, are excepted from certain provisions of the act. We do not believe that this is either an arbitrary, oppressive, or unreasonable use of the legislative power, nor that it unlawfully discriminates against complainant and interveners. Complainant and interveners present striking map illustrations of certain claimed workings of this section of the act. The answer thereto is that we are not authorized to strike down this act simply because in some instances it may work awkwardly, or may even produce hardships; our inquiry being whether or not it is arbitrary, oppressive, unreasonable, or discriminatory. Radice v. New York, supra.

3. Complainant and interveners also, for the same reasons, complain of section 5 of the act (Vernon's Ann. P. C. Tex. art. 827a, § 5). Section 5 provides that no commercial motor vehicle, truck-tractor, trailer, or semi-trailer shall be operated upon the highways outside of the limits of incorporated cities or towns, with a load exceeding 7,000 pounds on any such vehicle or train or combination of vehicles. Such section contains other provisions with respect to the pound weight per inch width of tire. But

this section does not become effective until January 1, 1932, and we do not pass upon the questions raised. Respondents cannot enforce its provisions against complainant and interveners prior to January 1, 1932, and we do not think they are now entitled to an interlocutory injunction, nor are they under the rule laid down in Pierce v. Society of the Sisters, supra.

4. The same attack is made upon section 3(f), in part reading:

"Sec. 3. (f). Immediately upon the taking effect of this Act, it shall thereafter be unlawful for any person to operate or move, or for any owner to cause to be operated or moved, any motor vehicle or combination thereof over the highways of this State which shall have as a load or as a part of the load thereon any product, commodity, goods, wares or merchandise which is contained, boxed or bound in any container, box or binding containing more than thirty (30) cubic feet and weighing more than five hundred (500) pounds where there are more than fourteen (14) of such containers, boxes or bindings being carried as a load on any such vehicle or combination thereof; provided, that no number of any such containers, boxes or bindings shall be carried as the whole or a part of any load exceeding seven thousand (7000) pounds on any such vehicle or combination thereof."

We entertain no doubt that the Legislature has the power to classify commodities that are bound, boxed, or in containers, and to regulate their transportation over the highways by prescribing their cubic contents, and/or their weight. We think the portion of section 3(f) which prescribes the cubic contents and weight of such packages is within the legislative power. Lindsley v. Natural Carbonic Gas Co., supra. We also think that the Legislature has the power to reasonably regulate and limit the load to be transported over the highways. Morris v. Duby, supra. But the writer cannot better lay down the rule applicable to the balance of this section, when considered in the light of the evidence before us, than by quoting what was said by this court, speaking through Hutcheson, Circuit Judge, in Equity 467, McLeaish v. Binford, 52 F.(2d) 151:

"Since, however, such restrictions must have a due and just relation to the supposed mischiefs to be avoided, the injurious character of highway use, and may not be arbitrarily designed under the guise of reasonable regulations, to hamper and prohibit in a discriminatory way the business of those who use the highways (Smith v. Cahoon, supra), plaintiffs may still have relief against the statute, if, though the basis of the classification is reasonable, the Legislature has used means having no just and fair relation to the mischief aimed at, means which, though by a skillful bewording they do appear to regulate, in reality destroy. For equally as well settled as the principle that legislative discretion to classify for regulation operates within wide limits in matters clearly within its jurisdiction, is its corollary, that the right to classify conceded restrictions imposed upon the class must not be arbitrary discriminations against that class in favor of others, having no just relation to the basis of the classification, the lawful ends desired, and must not be unreasonably and oppressively drastic in their overwideness of sweep. But such restrictions must be reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon the class; must have due relation to the basis of the classification and the ends desired, and must not be designed and effective to do indirectly what the Legislature may not directly do. Smith v. Cahoon, supra; Frost v. R. R. Com., 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; Weaver v. Palmer Bros., 270 U. S. 402, 46 S. Ct. 320, 70 L. Ed. 654; Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Pa. Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321; Burns Baking Co. v. Bryan, 264 U. S. 512, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661."

Applying these principles to section 3(f), taken in connection with section 5 elsewhere discussed, and in the light of the evidence before us, it appears that section 3(f) not only limits a load on the highways made up of packages (bales of uncompressed cotton for instance, which contain more than 30 cubic feet and on an average weigh more than 500 pounds) containing more than 30 cubic feet, and weighing more than 500 pounds, to 14 of such packages, which would aggregate in weight 7,000 pounds, but limits to 7,000 pounds a load where there is in such load even one package (one bale of uncompressed cotton) containing more than 30 cubic feet and weighing more than 500 pounds. While, on the other hand, persons transporting all

kinds of commodities not bound, boxed, or in containers, whether same be nitroglycerine, gasoline, crude oil, pianos, or grindstones, and all kinds of commodities boxed, bound, or in containers (bales of compressed cotton for instance which contain less than 30 cubic feet) containing 30 cubic feet or less, or weighing 500 pounds or less, may, prior to January 1, 1932, when section 5 of this act takes effect, transport a load of approximately 24,000 pounds.

It is certain that this provision has no just relation to the supposed mischiefs to be remedied, when it is considered that the regulation as to weight is for the protection of the highways, including the bridges, culverts, etc., and persons and property thereon, and that the transportation of a load of one weight, of packages containing more than 30 cubic feet and weighing more than 500 pounds, is no more injurious to the highways, or persons and property thereon, than the same weight load containing a miscellaneous assortment, with packages of less cubic feet contents, or less weight. One is reminded of a catch question, frequently propounded in childhood days, of which is the heavier, a pound of lead or a pound of feathers: We conclude from section 3(f) itself, and the evidence before us, that in this particular, at least, it is unlawfully discriminatory against, and oppressive of, complainant and those interveners who are engaged in the transportation of uncompressed cotton and other similar commodities, and that they are entitled to relief. The injury which will be suffered by them is asserted by them to be most serious; in fact, it is claimed they will be driven from the highways, particularly in so far as the transportation of uncompressed cotton is concerned. Without deciding the precise extent of such injury, we hold that it is shown to be sufficient to entitle them to present relief by interlocutory injunction as prayed for. It may be, however, that, if and when section 5 of this act becomes legally effective (if it does), a different question will be presented; hence such temporary injunction should be in force until a hearing of this case on its merits, but in no event beyond January 1, 1932. Without now deciding whether the invalidity of a portion of section 3(f) destroys the whole act, we limit the interlocutory injunction to restraining the enforcement of section 3(f).

It is pressed upon us by respondents in the argument at bar, and in the briefs, that the evidence now before us shows that the cubic contents, and/or weight, of bales of uncompressed cotton, may, in several ways, be reduced, or caused to be reduced, by complainant and interveners, so as to comply with section 3(f). A careful consideration of such evidence does not convince us that this is true, or, if true, that complainant and interveners can presently do so, i. e., within the time of the moving of the present (1931) cotton crop.

In consultation, we have also considered whether complainant and interveners may be given some measure of relief by a liberal construction of this section 3(f), and by respondents and other law enforcement officers of the state refraining from an enforcement of the act against complainant and interveners where it happens that the bales of uncompressed cotton, or other package, weigh slightly more than 500 pounds, or there otherwise be only some small departure from the strict letter of the law. Judging, however, from the pleadings filed by, and the arguments made by, respondents at the bar, and in their briefs, there is little, if any, disposition to soften the law in its enforcement.

5. The complainant and interveners attack a portion of section 2 of the act, which declares it to be unlawful and a misdemeanor for any person to drive, operate, or move, or for the owner to cause or permit to be driven, operated, or moved, on any highway, any vehicle or vehicles not of the size, weight, and construction, etc., prescribed in the act, but which contains, in substance, the following exception: "Provided the department, acting directly or through its agent or agents designated in each county, shall have and is hereby granted authority to grant permits limited to periods of ninety (90) days or less for the transportation over State highways of such overweight or oversize or overlength commodities as cannot be reasonably dismantled or for the operation over State highways of super-heavy and oversize equipment for the transportation of such oversize or overweight or overlength commodities as cannot be reasonably dismantled; provided, that any haul or hauls made under such permits shall be made by the shortest practicable route; provided further, that the department shall designate the county judges of the respective counties in addition to its other designated agents, who acting under the direction of the department shall have and are hereby granted authority to issue such permits over State highways," etc.

The plain purpose is to permit and make provision for the transportation over the highways of these commodities, extraordina-

ry in length, weight, or size, which (and the equipment upon which they are handled) cannot be reasonably dismantled, and which are not everyday, but are unusual, loads, and which, but for this or some similar provision, could not pass over the highways at all. The authority given by this section to the highway department and its agents in each county is not to suspend the laws, as was the power conferred, or attempted to be conferred, upon the highway department in Ex parte Faison, 93 Tex. Cr. R. 403, 248 S. W. 343, but is of a fact-finding and administrative nature. Trimmier v. Carlton, 116 Tex. 591, 296 S. W. 1070, and cases there cited. Texas Jurisprudence, vol. 9, § 70, and cases cited in footnotes. Ruling Case Law, vol. 6, §§ 175 and 179. The particular fact to be found is whether the commodity or equipment is of such nature as cannot be reasonably dismantled. If it is found to be, it is exempt from the requirement as to length, weight, or size, and permit may issue for it to be moved over the highway, but with a well-defined limitation as to route and time. It may be conceded that it is often difficult to define clearly the line between those legislative acts where power to suspend a law is given, or attempted to be given, and those where power of fact-finding or administration is given. We think that section 2 of this act does not violate section 28 of article 1 of the Texas Constitution, and is valid.

Neither is it unlawfully discriminatory against complainant and interveners. To all of them, the provisions of section 2 are available, as well as to all others, equally, and this court will not presume, as complainant and interveners seem to insist, that the action of the highway department, and/or its agents, will be arbitrary, and that they will be denied, and others granted, a permit under such section. It will be time enough for them to complain when thus treated. But, should we be mistaken, and should section 2 be invalid under the Texas Constitution, we would be unwilling to say that such invalidity would tear down the whole of this act, and entitle complainant to enjoin the enforcement thereof.

6. Several of the interveners are engaged in interstate commerce, and claim that this act places a greater burden upon them than is permitted. Neither from the act itself, nor the evidence before us, does this appear to be true. Hendrick v. Maryland, supra; Morris v. Duby, supra.

This disposes of all questions we deem necessary to discuss, and interlocutory injunction will be denied, except as against the enforcement of section 3(f), which will be limited as herein provided.