## WALD STORAGE & TRANSFER CO. v. SMITH et al.

## BEARD v. SAME.

### Nos. 547, 550.

District Court, S. D. Texas.

June 23, 1933.

Hirsch, Susman & Westheimer, of Houston, Tex., for plaintiff Wald Storage & Transfer Co.

James J. Shaw, of Houston, Tex., for plaintiff Beard.

Elbert Hooper, Asst. Atty. Gen., for defendants.

Before HUTCHESON, Circuit Judge, and WEST and McMILLAN, District Judges.

HUTCHESON, Circuit Judge.

By these two suits, each of the plaintiffs, alleging that he has applied for and been refused a permit to engage in interstate commerce as a contract carrier, seeks an injunction against the state commission and others to restrain them from interfering with his operations. Wald Transfer & Storage Company is a Texas corporation, engaged in the business of transporting property for hire over the highways of the state of Texas, and has been so engaged for the last seventeen years. Pending the action of the commission on its application for permit, it has been permitted to operate under a license as a Class B motor carrier. It is not, and does not intend to be, engaged as a common carrier. Hauling under a contract with one forwarder, it seeks the permit in order to do only that business. Its equipment is in good condition; it has always submitted, and is willing to submit, to any of the regulations the commission may promulgate.

Beard is, and for some time past has been, engaged in the business of a private contract carrier. Pending the action of the commission he has been permitted to operate under license as a Class B motor carrier. He is not, and will not be, engaged as a common carrier. The sole business which he proposes to do, and for which he asks a permit, is the handling, under private contract, wholly within the state of Texas, of goods moving in interstate commerce. Along with many others, these two filed their applications for permits to operate as contract carriers. After these applications were filed and before they were acted upon, they were amended so

as to ask for a permit to engage only as a private carrier in the transportation of commodities in interstate commerce between the cities of Houston and Galveston and other cities of Texas. In purported compliance with the statutory requirement that it set out the highways which it was proposed to operate over, the commodities which it was proposed to carry, and the cities and towns it was proposed to serve, the applications took the widest range. Beard's application, for instance, had attached to it the highway map of Texas, and in his application and by reference he proposed to operate between practically every city and town in the state and over practically every highway, and to carry practically every commodity which moves or might move in interstate commerce. Wald's application is not in the record, but from the briefs it appears that it was of substantially the same generality. After the amendment these applications were treated as substantially applications to transport commodities under contracts with the Universal Carloading & Distributing Company, a forwarding agency, over principally Highway 75, Houston to Dallas, Highways 3 and 3(a), from Houston to San Antonio, Highway 6, from Houston to Waco, and Highways 6 and 2 from Dallas to San Antonio, via Waco and Austin, and while the proof as to the condition of the highways to withstand traffic, their condition as to congestion and present and future burdens, covered practically all of the highways of Texas, the burden of contention settled on the conditions on the Highways last named.

These applications were combined with other applications including that of the Galveston Truck Line Company and the hearing took wide range, covering not only the question of the condition of the highways as to their ability to bear traffic burdens, and as to congestion and conditions of safe travel thereon, but as to the adequacy of existing transportation facilities, and the effect of the proposed operations upon them. The application of the Galveston Truck Line was first acted on. This was refused on the ground that to grant it would impair existing transportation facilities. This court, in Galveston Truck Line Corporation v. C. J. Allen, 2 F. Supp. 488, holding that the commission had no authority to refuse permits to engage in interstate commerce on considerations of that kind, granted an injunction against the commission restraining them from interfering with the operation of that line. Shortly thereafter, on January 25, when these applications were decided, the commission, in def-

erence to the opinion of this court in the Galveston Truck Line Case, rendered its decision on these applications wholly upon considerations of traffic conditions, what the highways were constructed to bear, the congestion of traffic on them, and excluding from consideration all questions of competition in carrier service, rendered an opinion which concluded as follows:

"After careful consideration of the testimony concerning the nature of the proposed service, the traffic conditions on the highways, the character and type of construction of said highways, and the use sought to be made of same by the applicants without any consideration of the adequacies of existing transportation facilities and the effect of the proposed operations by the applicant upon such existing transportation facilities, the Commission is of the opinion and finds the following facts:

"1: That it is doubtful whether or not the service proposed by this applicant would strictly conform to the definition of a contract carrier.

"2: That the extent and the manner of the use of the highways proposed by the applicants will unreasonably interfere with the use of the highways by the general public for highway purposes.

"3: That the use sought to be made of the highways proposed to be used by said applicant will constitute a future undue burden on said highways if the Commission should grant such permit.

"4: That the use of the streets of some of the cities and towns through which such operations will extend will unreasonably interfere with the use of such streets by the general public for ordinary purposes.

"It is therefore ordered, adjudged and decreed by this Commission, that the application of ———— for a permit to operate as a contract motor carrier in the transportation of property for hire as set forth in the application be, and in all things is, hereby denied."

Contesting this order as beyond the power of the commission to make, these suits have been filed.

■■ Prior decisions of this court, Sproles v. Binford (D. C.) 52 F.(2d) 730, affirmed 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167; Stephenson v. Binford (D. C.) 53 F.(2d) 509, affirmed 287 U. S. 267, 53 S. Ct. 181, 77 L. Ed. 288; Sage v. Baldwin (D. C.) 55 F. (2d) 968 (not appealed); C. J. Allen v. Galveston Truck Line Corporation, 53 S. Ct.

694, 77 L. Ed. ——; and the recent decision of the Supreme Court of the United States in line with all of these, C. A. Bradley v. Public Utilities Comm. of Ohio, 53 S. Ct. 577, 77 L. Ed. ——, decided April 10, 1933, have established the full right of the state to control, by prohibition and permit as to intrastate business and its right also to control the use of the public roads by persons desiring to use them for hire as to interstate business, by prohibition and permit, in the exercise of police power of the state to promote safety of life and limb, and the convenience of use of the highways for the purposes for which they were primarily designed, as well as for the preservation of the state's property in the roads and their protection against injury and destruction. They have narrowed this case to a very small compass. That compass embraces two questions: (1) Has the state authorized the commission, in determining whether it will grant a permit to contract carriers, to consider questions of the safety and convenience of highway use for the purposes for which it was primarily designed and the preservation of the state's property in the roads, that is, on the grounds of safety of the highways and of the public having the primary right to use them; and (2) if it has, have the plaintiffs shown that the action of the commission in this case is arbitrary. That is, have plaintiffs sustained the heavy burden which rests on them of overcoming the prima facies accorded to the orders of the commission when made within the apparent scope of their granted powers by a showing that they are unrelated to the purposes sought to be achieved, and are mere arbitrary fiats? Nectow v. Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; McLeaish v. Binford (D. C.) 52 F.(2d) 151.

An examination of the statutes and the decisions in the light of the Sage Case, supra, will show that though the Legislature has in terms made no distinction between inter and intra state business, the courts have worked out a construction of the statutes which finds valid and effective, as applied to interstate business, those provisions in it which have to do with the protection of the highways from inordinate and unsafe uses, and the protection of the safety of those having the primary right to use them, while striking down those provisions which authorize the commission to refuse permits for interstate operations based on purely or mainly competitive conditions, that is, considerations of the adequacy of existing transportation facilities, and the effect of the proposed operations on such facilities.

Plaintiffs conceding, as they must, that the Legislature may authorize the commission to exclude from the highways persons undertaking to engage in the business of contract carriers for hire, upon considerations of the safety of the public and of the highways, contest the order as unsupported either in law or in fact. As unsupported in law, because the Legislature, while specifically authorizing the commission to refuse certificates of convenience and necessity to common carriers upon considerations of safety to highways and the public, has not made this one of the conditions on which a permit to a contract carrier may be refused, but has limited the right of the commission to refuse permits entirely to considerations of whether the efficiency of existing common carriers would be impaired. They point to section 6 (Vernon's Ann. Civ. St. Tex. art. 911b, § 6), setting out the things which an applicant for a permit must show before it will be granted, as in effect providing that if the application for the permit makes such showing it must be granted. They argue that section 3 (Vernon's Ann. Civ. St. Tex. art. 911b, § 3), providing that no motor carrier shall operate as a contract carrier without having first obtained a permit, and sections 6 and 9 (Vernon's Ann. Civ. St. Tex. art. 911b, §§ 6, 9), setting out what the commission is to consider in granting or refusing permits and certificates, limit the action of the commission to those things set out, and make their refusal, except for causes there fixed, invalid. Defendants point to the general purposes of the act, its general provisions, to section 4 (d) (Vernon's Ann. Civ. St. Tex. art. 911b, § 4 (d), "The Commission is further authorized and empowered and it shall be its duty to supervise and regulate motor carriers in all matters whether specifically mentioned herein or not so as to carefully preserve, foster and regulate transportation and to relieve * * * future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interest of the public," as authority to the commission to do just what it has done. They argue that it is a strained and unreasonable construction of the act, designed as it is to protect the highways from undue burdens, to say that the commission may refuse certificates to common carriers, because the highways will not permit the service, and may refuse certificates to common carriers because of too great congestion or danger to the public having the primary right to use them, but may

64

not refuse permits to contract carriers, upon the same considerations.

■ We think the defendants are right. The case is not one like some of those cited by plaintiffs, Arkansas R. R. Commission v. Ind. Bus Line, 172 Ark. 3, 285 S. W. 388; Richland Gas Co. v. Hale, 169 La. 300, 125 So. 130; Chicago Motor Coach v. City of Chicago, 337 Ill. 200, 169 N. E. 22, 66 A. L. R. 834; Ex parte Patterson, 42 Tex. Cr. R. 256, 58 S. W. 1011, 51 L. R. A. 654, where the power to regulate and control has been granted, but the power to suppress or prohibit has been withheld. The very purpose of the act under consideration here was to limit, by prohibiting, the use of the public roads by carriers for hire so as to conserve them for their more effective, safe, and convenient use by the general public, the primary purpose for which they were intended, as well as to conserve and strengthen the transportation facilities of the state. The whole structure of this act shows that it was directed not primarily at the regulation of a particular carrier, but at the regulation of the use by carriers for hire generally, of the public roads, with the prime purpose to so limit their use as to conserve the roads for their primary uses. While we agree, therefore, with plaintiffs that, generally speaking, the power to regulate does not carry with it the power to destroy or to prohibit altogether, and that if a construction of the statute can yield no more than that as to interstate business, the commission cannot prohibit the use of the roads, but can only regulate those who use them, plaintiffs must have their permit, we do not think that the statute can be so limited. We think it plain that the provision in it for denying to contract carriers the right to permits where the territory is already adequately served, was not intended to be exclusive of the right to deny such permit where bridges or pavements are inadequate, or the traffic congestion is too heavy for public safety or convenience. We think it plain that the statute, construed as a whole, authorizes the commission to exclude from the highway those who propose to make their living by hauling on them, contract as well as common carriers, upon proper considerations of highway and public safety.

■ Coming to the second point, that the record shows that the commission's order was arbitrarily made upon considerations of competition, rather than of traffic and highway safety, that it shows that there is no sound basis upon which the order could rest, we think plaintiffs have failed here too. Their applications sought permits to operate over practically every highway in the state. If we take these applications on their face, and the refusal of the commission as directed to them as presented, which it seems plain to us we must, Bradley v. Public Utilities, supra, it must be said that the record as to the number of weak bridges and bad roads in the state overwhelmingly supports their orders refusing permits for such indiscriminate operations. Further, if we take their applications, as in its opinions, though not in its orders the commission seems to have done, as limited to the main highways over which they expect to operate, plaintiffs find themselves confronted with the fact that as to these highways there was ample testimony to support the commission's finding that they are far too heavily congested, and that the safe and convenient operation over them of vehicles having the primary right to run on them, and of persons using the streets and roads, will be greatly abridged and injured by the use of them which plaintiffs design to make. It may be that the commission, in refusing the permits, considered these applications as two of many, and that they reached their conclusion of injury to the highways and to public safety upon the erroneous view that if they granted plaintiffs' applications they must grant all the rest.[1] It may be that they would not have refused plaintiffs' permits in view of their long engagement in the business of contract carriers and general fitness for that service, had they considered them wholly apart from the others. The evidence makes a very strong case for the holding that it would be greatly injurious to the highways and to the safe and convenient use of them, to grant all the permits, applications for which are being pressed. A case, of course, much stronger than is made for the refusal of one or two. We cannot say, however, that even considered from the standpoint alone of the application of the plaintiffs, the record is so wanting in evidence in support of their exclusion as that the prima facies which attend the commission's action [People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041] are overthrown and the orders are invalid.

We conclude that no case is made out for an injunction, and so finding, we dismiss the bills for want of equity.

---

[1] See Terrell's affidavit, and evidence of some of the witnesses on the number of trucks which would be turned loose on the highways if the commission were compelled to grant indiscriminately all applications for the moving of commodities to and from the ports.